IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-00374-WYD

MEGAN TRICHAK,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental

security income ["SSI"].  For the reasons stated below, this case is reversed and

remanded to the Commissioner for further fact finding.

I.      <u>BACKGROUND</u>

In May 2009, Plaintiff filed applications for disability benefits under Titles II and

XVI of the Social Security Act ["the Act"].  (ECF No. 10, Administrative Record ["AR"]

130-33.)  Plaintiff was born in 1975, and was 34 years old on her alleged onset of

disability date.  (*Id.* 45, 130.)  Plaintiff originally claimed that she became disabled on

August 6, 2008 (*id.* 170), but amended her onset date to July 28, 2009.  (*Id.* 53, 170.)

She alleged disability due to back and knee injuries, endometriosis, and hyperglycemia.

(*Id.*)

Plaintiff's claims were denied initially (AR 82-88), and she requested a hearing before an ALJ. (*Id.* 90.) Following a hearing in October 2010 (*id.* 50-81), an Administrative Law Judge ["ALJ"] issued a decision on November 16, 2010, concluding that Plaintiff was not disabled within the meaning of the Act. (*Id.* 35-45.)

More specifically, at step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2013. (AR 37.) The ALJ also found that Plaintiff had not engaged in substantial gainful activity since July 25, 2009, the amended alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following "severe" impairments: chronic lumbar spine pain, status post decompression/ fusion at L5-S1. (*Id.* 38.) She found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. She found that Plaintiff could perform light work, except no more than occasional bending, stooping, kneeling, crouching, or crawling; and the work should allow for sitting and standing at will. (AR 39.)[1] At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 43.) At step five, relying on vocational expert testimony, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* 44.) Thus, she concluded that

---

[1] "Light work involves lifting no more than 20 pounds at a time  with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Plaintiff was not disabled under the Act at any time through the date of the decision.

(*Id.*)

On December 16, 2010, Plaintiff filed a Request for Review of Hearing Decision

(AR 31) which was denied by the Appeals Council on March 21, 2012.  (*Id.* 27-30.)  On

June 4, 2012, Plaintiff's counsel withdrew from her representation (*id.* 25, 26), and

current counsel was appointed on June 14, 2012.  (*Id.*)  Counsel filed a request for an

extension of time to file a civil action.  (*Id.* 23.)  The Appeals Council treated that filing

as a request to reopen the case.  (*Id.* 11-17.)  On December 10, 2012, the Appeals

Council again denied Plaintiff's request for review.  (*Id.* 1-4.)  This action was filed on

February 12, 2013.

II.     ANALYSIS

      A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner.

B.      The Merits of Plaintiff's Arguments

1.      The Weighing of the Medical Opinions and Assessment of the RFC

Plaintiff first argues that the ALJ improperly substituted her own judgment for that of the medical providers when she failed to properly develop the record with respect to Plaintiff's functional impairments and her ability to work.  Related to this, Plaintiff argues that the ALJ erred in the RFC as she did not make any findings about non-exertional impairments.

Turning to the medical evidence, Plaintiff's functional capacity to perform work activities was evaluated twice during her pursuit of disability benefits.  The first evaluation was performed by a lay employee of the state agency (AR 268-275), and the second by Dr. Tyler, who Plaintiff asserts is her treating physician.  (*Id.* 468-473.)  The

ALJ explicitly gave no credit to the state agency employee's evaluation because it was

"a lay opinion by a person with no medical qualification." (*Id.* 42.)  That finding is not at

issue in this appeal.

As to Dr. Tyler, he issued two separate opinions of Plaintiff's functional abilities

dated September 30, 2010.  I first address his Medical Assessment of Ability to Do

Work-Related Activities based on Plaintiff's physical impairments.  (AR 470-73.)

Dr. Tyler found that Plaintiff could lift and carry up to ten pounds occasionally, but could

never lift or carry more than that. (*Id.* 470.)  He also found that Plaintiff could sit, stand

and/or walk only 30 minutes at a time, and for only a total of 30 minutes each in an

eight-hour workday. (*Id.* 471.)  Further, he stated that Plaintiff was unable to perform a

number of activities of daily living, especially those required to travel to a job or to move

freely in a workplace. (*Id.* 473).  He concluded that Plaintiff's limitations have lasted or

will last for twelve consecutive months. (*Id.*)  As support for his opinion, Dr. Tyler

referred back to his initial intake report of August 10, 2010, in which he addressed

Plaintiff's pain and impairments and the sedative effect of certain of her pain

medications. (*Id.* 471, 464, 465.)

The ALJ gave this evaluation "minimal weight".  She stated that the assessment

was  "unpersuasive" for various reasons, including:

> the lack of clarity regarding the claimant's ability to sit, stand and walk each
> for 30 minutes at one time, yet she can only sit, stand and walk for 30
> minutes total in an 8-hour workday; further, Dr. Tyler saw the claimant only
> twice prior to providing this assessment with no real findings noted in the
> August 25th medication management session; further, the findings are
> inconsistent with Dr. Tyler's August 10, 2010 initial evaluation certainly to the
> extent that no restrictions or limitations were given to the claimant at that

time. In addition, due to the lack of treatment history with the claimant, it appears that this assessment is based primarily on the claimant's subjective reports rather than on objective findings in the record, which fail to show this level of severity.

(AR 42.)

I find the ALJ erred in her assessment and weighing of this opinion. First, Plaintiff contends that Dr. Tyler was a treating physician. Consistent with that, Plaintiff testified at the hearing that she had seen him four times and had received trigger point injections that had not been successful in treating her pain. (AR 41.) The ALJ rejected that testimony on the basis that "the record fails to show the claimant's two subsequent treatment sessions with Dr. Tyler." (*Id.*) However, that was not a proper basis to reject Plaintiff's testimony, as "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to h[er] attention during the course of the hearing." *Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996). Moreover, based on the alleged treating relationship, the ALJ was required to determine whether Dr. Tyler was a treating physician. If so, his opinion had to be given deference and evaluated under the sequential two-step inquiry relevant to such physicians. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The failure to do so was legal error.

I also agree with Plaintiff that the ALJ improperly substituted her judgment for that of Dr. Tyler. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments,*

*speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004)

(emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.

2002)).

Dr. Tyler documented objective findings that supported his assessment, pointing

to his August 10, 2010 report.  (AR 471-73.)  That report revealed numerous objective

findings on physical examination listed in multiple paragraphs of the assessment.  (*Id.*

463-64.)  Among other things, diffuse myofascial trigger points and spasms were noted

along with segmental dysfunctions found in both the cervical and thoracic spine

examination.  These segmental dysfunctions were stated to be "the primary generators

of cervical pain."  (*Id.* 463.)  Dr. Tyler's impressions included, among other things,

"[p]robably femoral nerve irritability secondary to spasm in the right psoas major muscle

with tingling parasthesia in the anterior right thigh", "[p]elvic obliquity with regional

muscle spasms and trigger points", "[s]egmental dysfunctions of the cervical thoracic

spine with overlying fibromyositis/myofascial pain syndrome", and "[s]ituational anxiety

and disturbed sleep cycle secondary to pain."  (*Id.* 464.)  While the ALJ found that the

objective findings did not document the severity of the findings in Dr. Tyler's

assessment, this was an improper lay judgment.  A doctor's statements about Plaintiff's

condition or impairments "are specific medical findings" which the ALJ errs in rejecting

in the absence of conflicting medical evidence.  *Washington v. Shalala*, 37 F.3d 1437,

1439 (10th Cir. 1994).

In choosing to give "minimal weight" to Dr. Tyler's physical assessment, the ALJ

stated that the findings in the assessment are inconsistent with his August 10, 2010

initial evaluation "to the extent that no restrictions or limitations were given to the claimant at that time". I find that this is not a proper basis to reject Dr. Tyler's opinion. The initial evaluation was just that—an evaluation of Plaintiff's condition and a plan for treating it. The evaluation was not meant to address Plaintiff's ability to work. Courts have made clear that there is a distinction between a doctor's notes for purposes of treatment and the doctor's opinions on the claimant's ability to work. *See Brownawell v. Comm'r of Soc. Security*, 554 F.3d 352, 356 (3rd Cir. 2008); *Jones v. Astrue*, No. 11 C 4827, 2012 WL 2018534, at *9 (N.D. Ill. June 5, 2012); *Cerrone v. Astrue*, Case No. 10-114, 2010 WL 2697923, at *14 (W.D. Pa. 2010). The treatment notes describe a claimant's condition at the time of the appointment while the functional assessment describes the doctor's opinion as to the claimant's ability to function in a work setting. *See Brownawell*, 554 F.3d at 356. Thus, the fact that Dr. Tyler did not impose any restrictions in his evaluation does not justify the rejection of his later functional assessment.

While the ALJ also relied on "the lack of clarity" between Dr. Tyler's finding regarding Plaintiff's "ability to sit, stand and walk each for 30 minutes at one time" as compared to his finding that she can only sit, stand and walk for 30 minutes total in an 8-hour workday, that did not allow her to reject his entire opinion. Further, if the ALJ believed Dr. Tyler's opinion was actually inconsistent on this issue, she may have needed to recontact him. *See* 20 C.F.R. § 404.1520b; *Russell v. Astrue*, 506 F. App'x 792, 795 (10th Cir. 2012).

Finally as to Dr. Tyler's physical assessment of Plaintiff, I find error with the ALJ's

finding that "due to the lack of treatment history with the claimant, it appears that this

assessment is based primarily on the claimant's subjective reports rather than on

objective findings in the record, which fail to show this level of severity." (AR 41.) As

previously noted, there were numerous objective findings in the assessment that

supported Dr. Tyler's opinion. Thus, the ALJ did not have "a legal or evidentiary basis"

for her finding that Dr. Tyler's opinion was based primarily on Plaintiff's subjective

complaints of pain. *Langley*, 373 F.3d at 1121. Moreover, as previously noted, there is

not a lack of treatment history, and I previously found that the ALJ failed to develop the

record by obtaining all the medical records regarding this treatment.[2]

I now turn to Dr. Tyler's Functional Capacity Evaluation ["FCE"] (Mental). (AR

468-69.) He opined that Plaintiff had moderate limitations in all tasks of understanding

and memory, and in all but one task of sustained concentration and persistence. (*Id.*)

He also found that Plaintiff had marked limitations in her "ability to complete a normal

workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest

periods." (*Id.*) Also, he found that Plaintiff had moderate limitations in all tasks related

to social interaction, and that she had marked limitations in the "ability to travel to

unfamiliar places or use public transportation" and "to set realistic goals or make plans

---

[2] Even if there were a lack of treatment history, this would not be a valid basis to reject the opinion. While it may be relevant to finding that Dr. Tyler's opinion is not entitled to the conclusive weight of a treating physician, "that just effectively reduces [Dr. Tyler] to the status of an examining-source opinion; it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

independently of others." (*Id.*)  Further, he found that Plaintiff would have to miss work

more than three days per month.  (*Id.* 469.)  However, he noted that Plaintiff would have

the ability to perform the following work-related activities on a sustained basis (8 hours

per day, 5 days per week with normal breaks): to understand, remember and carry out

simple instructions; to make judgments that are commensurate with the functions of

unskilled work; to respond appropriately to supervision, co-workers, and usual work

situations; and to deal with changes in a routine work setting.  (*Id.*)  As support for his

findings, he again referred to his August 10, 2010 evaluation.

The ALJ discussed Dr. Tyler's opinion in the mental FCE only at step two.  (AR

38-39.)  She gave the opinion no weight and thus found that Plaintiff "does not have a

medically determinable mental health impairment based on the evidence of record." (*Id.*

39.)  She found the opinion "unpersuasive because Dr. Tyler is a pain management

specialist and not a mental health professional." (*Id.* 38.)  She further stated:

> Dr. Tyler does not provide the claimant with mental health treatment other
> than a recent prescription for Klonopin, nor has he referred the claimant to
> mental health treatment or counseling.  Furthermore, Dr. Tyler's assessment
> is internally inconsistent, providing that the claimant has marked limitations
> in her ability to sustain full-time work, while he also notes that she has the
> capacity to sustain full-time work.  Moreover, based on the record, Dr. Tyler
> saw the claimant twice prior to providing this assessment, yet he reported
> that her mental health limitations have existed since January 2008.  Clearly
> Dr. Tyler was relying on the claimant's own subjective complaints rather than
> objective findings, as there is no mental health treatment in the record.

(*Id.* 38-39.)

Again, I find that the ALJ erred in her weighing of and decision to essentially

reject Dr. Tyler's opinions in the FCE.  First, the ALJ ignores the fact that Dr. Tyler

diagnosed Plaintiff with a pain syndrome.  Consistent with that, he prescribed Klonopin,

an anti-anxiety medication.  *See* http://www.medicinenet.com/clonazepam/article.htm.

Thus, Plaintiff's impairments had both a psychological component and a physical

component, which were linked to the pain disorder, and Dr. Tyler opined in his capacity

as a pain management specialist as to the impact of both components.  The ALJ was

required to consider both opinions, and was not entitled to reject the mental assessment

on the basis that Dr. Tyler was not a mental health professional.  *See  Fuller v. Astrue*,

766 F. Supp. 2d 1149, 1160, 1162 (D. Kan. 2011) (finding that ALJ had to consider

medical opinions as to both the psychological and physical impacts on working from

pain, even though doctors were not mental health care experts, when they opined that

Plaintiff's pain presentation was valid and linked the psychiatric/physical opinions); *see*

*also Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (finding as to a pain

disorder that the ALJ erred in not considering "'the possibility that psychological

disorders combined with physical problems,'" the diagnosis of a somatoform disorder,

and in not treating "plaintiff's somatic preoccupation as a manifestation of his mental

impairment or consider how that impairment . . . affected his perception of pain"); *Teter*

*v. Heckler*, 775 F.2d 1104, 1106-07 (10th Cir. 1985).

      I also find that the ALJ erred in rejecting Dr. Tyler's mental functional assessment

on the basis that it was based merely on Plaintiff's subjective complaints for the same

reasons discussed above in connection with Dr. Tyler's physical assessment of Plaintiff.

Dr. Tyler's opinion diagnosing a pain syndrome with both mental and physical

components appears to have been based *both* on his examination of Plaintiff and her

subjective statements.  The Tenth Circuit has made clear that "[t]he practice of

psychology is necessarily dependent, at least in part, on a patient's subjective

statements."  *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005).  Thus, "[a]

psychological opinion need not be based on solely objective 'tests'; those findings 'may

rest either on observed signs and symptoms or on psychological tests.'"  *Id.* (quoting

*Robinson*, 366 F.3d at 1083).  To the extent the ALJ believed the medical record from

Dr. Tyler regarding Plaintiff's mental impairments was insufficient or inadequate, the

ALJ needed to develop the record on this issue, rather than simply rejecting it.  *Id.* at

760.[3]

The ALJ's errors in assessing the opinions of Dr. Tyler as to Plaintiff's mental and

physical impairments may well impact the findings at step two, the RFC, and later

steps of the sequential evaluation, and must be addressed on remand.   However, I

also find that the RFC assessment was not supported by substantial evidence.

In that regard, there was extremely limited medical evidence regarding Plaintiff's

capacity to perform work after the alleged onset date of her disability.  Indeed, since the

ALJ gave minimal to no weight to Dr. Tyler's assessments, there was no other

functional evaluation of Plaintiff's impairments.[4]  Yet the ALJ went on to make medical

---

[3] I also note as to the ALJ's statement that Dr. Tyler did not refer Plaintiff to mental health treatment or counseling that there is no evidence that such treatment or counseling would be effective in regard to a pain disorder.

[4] Most of the medical evidence the ALJ cites in support of those conclusions are treatment notes that predate Plaintiff's alleged onset date. (AR 40.)  She also cites post-surgical medical evidence that shows some objective improvement in Plaintiff's condition, but still shows physical and functional abnormalities.  (*Id.* 41.)  None of these post-surgical notes address impairments to Plaintiff's everyday functioning.

conclusions regarding Plaintiff's impairments and the impact on her functioning based

on her own extrapolations from the medical evidence, conclusions that, as a lay person,

she was not qualified to make.  *See Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir.

2003) (where no doctor has defined a claimant's capability for walking, standing or

sitting, etc., the level of exertion that the claimant can perform or the limitations, if any,

on the claimant's movement or posture, and where the ALJ rejected the evidence from

the claimant about what she could do, "the ALJ was not in a position to make any RFC

determination—there is no evidence to support such a finding"); *Bolan v. Barnhart*, 212

F. Supp. 2d 1248, 1262 (D. Kan. 2002) ("[t]he ALJ is not a medical expert on identifying

the clinical signs typically associated with chronic musculoskeletal pain" and is thus "not

entitled to *sua sponte* render a medical judgment of what he thinks are the clinical signs

typically associated with chronic musculoskeletal pain without some type of support for

this determination"; "[t]he ALJ's duty is to weigh conflicting evidence and make disability

determinations; he is not in a position to render a medical judgment").

The ALJ also failed to make a function-by-function assessment of Plaintiff's

limitations, as required, and did not explain how she reached her decision regarding the

RFC.  *See Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005).  This is not

harmless error given the fact that the ALJ rejected the only evidence regarding Plaintiff's

limitations, thus leaving the Court to speculate what evidence she relied on in reaching

her RFC conclusion.  Where, as here, the ALJ fails to point to specific evidence

supporting each conclusion, the RFC findings are not supported by substantial evidence

and a remand is required.  *See Conkle v. Astrue,* 297 F. App'x 803, 806-07 (10th Cir.

2008); *Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). Indeed, it is axiomatic that all of the ALJ's required findings must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

I also find that the ALJ failed to take into account the combination of Plaintiff's impairments, and how they impacted both her exertional and non-exertional limitations. *See Wells v. Colvin*, 727 F.3d 1061, 1066 (10th Cir. 2013) ("in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*") (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).  Thus, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id.*  As the Tenth Circuit has noted, "[e]ven if an impairment is not severe, it does not become irrelevant." *Mushero v. Astrue*, 384 F. App'x 693, 695 (10th Cir. 2010).  Indeed, while a non-severe  impairment "standing alone may not significantly limit an individual's ability to do basic work activities, it may-when considered with limitations or restrictions due to other impairments-be critical to the outcome of a claim.'" *Id.* (quotation omitted).  This particularly impacts the mental RFC assessment of Dr. Tyler, and the significant non-exertional limitations that he opined to therein.  These limitations must be properly considered on remand.

Based on the foregoing, I find that this case must be remanded for a proper weighing of Dr. Tyler's opinions and the medical evidence.  The RFC also needs to be reassessed on remand.

2.      The Credibility Assessment

Plaintiff also argues, and I agree, that the ALJ erred in assessing her credibility, and that a remand is required on this basis as well.  In so finding, I acknowledge that "'[c]redibility determinations are peculiarly the province of the finder of fact.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quotations omitted).

The ALJ stated as to Plaintiff's credibility that her "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the" RFC. (AR 42.)  In so finding, she noted that Plaintiff "described daily activities which are fairly limited" (*id.*), but found they could not "be objectively verified with any reasonable degree of certainty."  I find that is not a proper basis to simply discount the evidence on this issue.  The ALJ did not find that the evidence about Plaintiff's daily activities was not credible.  Instead, she went beyond the record evidence and found the fact that the daily activities could not be objectively verified, *without more*, was an impediment to credibility.  This finding has no support in pertinent case law or Social Security Rulings

Indeed, the Social Security Administration has made clear that "[w]hen the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established", as found in

this case, "the intensity, persistence, and functionally limiting effects of the symptoms

must be evaluated to determine the extent to which the symptoms affect the individual's

ability to do basic work activities."  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

"This requires the adjudicator to make a finding about the credibility of the individual's

statements about the symptom(s) and its functional effects."  *Id.*  The ALJ failed to do

that here.

The ALJ also relied on the fact that "at least one of the claimant's treating

sources indicated that the claimant exhibited symptom magnification."  (AR 42.)

However, again she failed to consider the entire record on this issue.  Thus, while

treating physician Dr. Jenks observed positive Waddell's signs in September 2008,

found "[s]ignificant symptom magnification" (*id.* at 281) and was concerned about

Plaintiff's motivation (*id.* at 289), he referred her for tests and a possible surgical

evaluation with Dr. Sung.  (*Id.* at 289, 285.)   In November 2008, after noting that a

lumbar MRI done in October 2008 showed "an L5-S1 disc protrusion, some other small

disc bulges", Dr. Jenks did not find symptom magnification.  Instead, he diagnosed

"[l]ow back pain" and "[l]umbar disc protrusion".  (*Id.* 285.)   While he found that

Plaintiff's complaints of pain were "based almost entirely on subjective information", he

again noted that he had referred Plaintiff to Dr. Sung to determine if surgery was

necessary.  (*Id.* 285.)

The tests that Dr. Jenks referred Plaintiff for revealed objective evidence at L5-

S1 of "severe concordant pain at the mid lumbrosacral area worse on the left side

radiating into the left buttocks and down the left thigh halfway to the knee."  (AR 234.)

This was diagnosed by Dr. Meyer as a result of a diagnostic discography.  (*Id.*)  Further,

Dr. Sung determined that a spinal fusion was appropriate, and performed a spinal fusion

at L5-S1.  (*Id.* 215.)   And Dr. Tyler stated in August 2010 in his initial evaluation of

Plaintiff that he did "not believe she is exaggerating in her pain responses but she is

semi-emotional even talking about some of these issues as well as with the exam which

is typically (sic) with patients who have struggled in their lives with pain."  (*Id.* 463.)

Upon examination, Dr. Tyler found no radicular pathology but found a number of other

of other objective indicators of pain as discussed earlier including spasm, nerve

irritability, pelvic obliquity, and "segmental dysfunctions with overlying fibromyositis/

myofascial pain syndrome."  (*Id.* 464.)

Based on the foregoing, the ALJ's reliance on Dr. Jenk's suspicions of "symptom

magnification" may have been misplaced based on the later evidence in the record.

The ALJ erred in not properly considering this later evidence, and in selectively applying

the evidence.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ

may not "'pick and choose among medical reports, using portions of evidence favorable

to his position while ignoring other evidence.'") (quotation omitted).[5]

---

[5] I further note that Waddell signs are simply "indications that a patient has nonorganic pain."  *Wall v. Astrue*, 561 F.3d 1048, 1056 n. 10 (10th Cir. 2009).  They do not necessarily establish that a person is malingering; instead, "[t]hey are used to identify patients who may require detailed psychological assessment."  *Id.; see also Minor v. Comm'r of Social Security*, 513 F. App'x 417, 422 n. 15 (6th Cir. 2013) ("'A positive Waddell's sign may indicate that the patient's pain has a psychological component rather than organic causes. While it is a common perception in the litigation arena that these signs are proof of malingering and fraud, they merely describe a constellation of signs used to identify pain in those who need more detailed psychological assessments.' . . .'The literature ... reveals that there is no association between positive Waddell signs and the identification of secondary gain and malingering.  Patients with strong psychological components to their pain often display these signs as well.'") (quotation omitted).

Finally, I direct that the ALJ's pain analysis be reassessed on remand. The record in this case contains objective findings that substantiate Plaintiff's complaints of pain, which the doctors corroborated through their diagnoses of a pain disorder. The ALJ appeared to selectively apply the evidence on this issue, finding that the evidence was "relatively weak" (AR 42) even in light of the evidence discussed above. Again, this was an improper lay judgment. She then completely discounted Plaintiff's complaints of pain and how it impacted her ability to work, even though she found at step two that Plaintiff had chronic lumbar spine pain. I find this was error. *See Baker v. Barnhart*, 84 F. App'x 10, 13-14 (10th Cir. 2003) (stating that the ALJ's finding that claimant's pain was a severe impairment at step two "makes it impossible to conclude at step four that her pain was insignificant" and directing the ALJ on remand to assess the level of pain she suffers, and determine whether there are jobs she can do with that level of pain). The ALJ's selective application and discounting of the medical evidence was error, and I direct the ALJ to consider all the evidence on remand in assessing Plaintiff's pain.

Thus, the ALJ "must assess the level of pain [Plaintiff] suffers, and determine whether there are jobs she can do with that level of pain." *Baker*, 84 F. App'x at 13-14. The ALJ must also consider the impact of Plaintiff's pain medication, and the other factors relevant to pain. *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (finding that "[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from

pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication").

### 3. The Step Five Evaluation

I find that the step five evaluation will need to be reassessed in light of my findings that the ALJ erred in assessing the RFC, in weighing Dr. Tyler's opinions, and in assessing Plaintiff's credibility. I also direct the ALJ on remand to determine if the ability to alternate sitting and standing as found in the RFC conflicts with the Dictionary of Occupational Titles ["DOT"] for the jobs that the ALJ found Plaintiff could do based on her RFC. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled . . . .Reasonable explanations for such conflicts. . . include [the fact that]. . .[e]vidence from VEs or VSs can include information not listed in the DOT. . . . Information about a particular job's requirements . . . may be available . . . from a [vocational expert]'s experience in job placement or career counseling").

### III. CONCLUSION

Based upon the foregoing, I find that the ALJ erred in her assessment of the RFC and in weighing Dr. Tyler's opinion, and in assessing Plaintiff's pain and credibility. These errors may impact the ALJ's findings at step five, which must be reassessed on remand. I also direct the ALJ on remand to examine whether there is a conflict between

-19-

the vocational expert testimony and the DOT in regard to the ability to alternate sitting

and standing, and elicit a reasonable explanation for any conflict.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).

Dated:  July 14, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge